Good morning everyone. We're here today for oral arguments. We are going to begin with case 24-2871 John Doe v. Young and we'll begin with oral argument Mr. Brown from you. Good morning judges. Good morning. May it please the court. Yes. My name is Brandon Brown. I represent the plaintiff appellant in this matter of Doe v. Young which essentially is Doe v. the Board of Trustees of the University of Illinois. This is a case where the plaintiff appellant was expelled from the University of Illinois following a Title IX complaint. There was a process at the university level. Obviously we believe and I won't rehash the facts that are offered in the brief but we believe his due process rights were trampled over at the university level but also subsequently we believe his due process rights were violated at the district court level. Initially we filed a complaint, well the plaintiff filed a complaint against the University of Illinois. At the inception of the litigation there was a corresponding petition to proceed under a pseudonym. The defendants were immediately notified at the time that the complaint was filed that the litigant or the plaintiff intended or wished to proceed under a pseudonym. The defendant, University of Illinois counsel was contacted and they did not object or oppose. Obviously it's our position that this was an agreed order or agreed motion at that time upon contact to proceed. Mr. Brown, what year was that, that there was that agreement? This would have been in 2023, November 2023 at the inception of the litigation. Thank you. You may continue. Thank you. And this was, obviously there were other matters at issue being university student defendants as well as other students within students who were also a part of the litigation. Mr. Brown, how do you respond to the evidence that was submitted by the university here that Jane Doe, who is the alleged victim of the underlying events, is not worried about the disclosure of her identity if your client has to reveal his true name? Our concern is that that position was not fully vetted. We think an evidentiary hearing would have been appropriate. I know that... You don't think the affidavit that represented that is sufficient? We do not. We think an evidentiary hearing would have been appropriate. Certainly Jane Doe was able to offer her position and I think that was a position or an affidavit that was offered by the appellants in response to another case. Do you dispute that she feels that way or are you saying an evidentiary hearing is necessary to see if that's really accurate? Absolutely, and to be vetted. I think it was a one-sided presentation that was offered and the appellant, the appellee, their position is that the appellant didn't necessarily, they had an opportunity to confront or investigate this. We vehemently disagree with that characterization. We think the appropriate vehicle to vet Jane Doe's position, especially considering Jane Doe is not a legal scholar, certainly not a lawyer, and so Jane Doe would be in no position absent counsel to make a determination that this court is to rely on whether or not there is any, would be any potential harm or specifically with respect to the ramifications of her position. You don't dispute, Mr. Brown, that it is a relevant inquiry under our case law as to whether or not the disclosure of your client's identity could potentially impact her? We don't dispute that, no. Of course not. If an evidentiary hearing were to take place, rather than an affidavit, and she were to say, I'm not worried about my name being linked to John Doe's, what would your client's position be in that hypothetical scenario? Not only my client, we believe our client would disagree with that, with that assessment. We believe that if allowed an evidentiary hearing, we would be able to present evidence to controvert that, but also additional witnesses who I think would give the best perspective on what the reputation or the harm, the outside harm would be, not just Jane Doe. So your request for an evidentiary hearing is broader than just a potential linkage between the accuser and your client. It's all of the aspects that might happen as a result of potential damage to your client. That is correct, all of it, but not diminishing the Jane Doe aspect of it as well. Isn't the potential damage to Jane Doe's reputation, isn't that really something that's up to her to make a determination on, though, not your client? Well, it's up to the court to make the determination, and I don't believe Jane Doe can independently instruct the court on the legal principles that the court is to consider. Certainly Jane Doe's position is something that is of great relevance, but it is not that Jane Doe does not have the authority or the power to dictate what the legal conclusions are of the court, absent diligent inquiry. Mr. Brown, the legal landscape's been changing a little bit, even as this case has been progressing. Because as you point out, November 23 positions are taken with regard to the pseudonym. Then we have two, our court has two decisions that have been issued involving Indiana, as well as involving, I believe it's Loyola. Since this case, I want to give you an opportunity to respond to the way the law has been set forth in those two recent decisions. Well, Your Honor, Doe v. Trustees of Indiana, the 2024 case that is cited repeatedly by the appellee, but also cited by the appellant, and then also the Doe v. Loyola case doesn't change anything. There's no new precedent that is offered in those cases. It's simply the appellate court and Judge Easterbrook reminding the litigants or reminding the courts that this is a relevant inquiry. But those cases are distinguishable from this case. In those cases, you did not have waiver of the pseudonym issue. This was essentially eight months later, after the appellees had agreed to proceed on the pseudonym. That's not an issue. This was an objective to issue in Doe v. Trustees. Also, this case was at the summary judgment stage of the litigation. So the facts were fully vetted. Here we are at the conclusion of the briefing for the motion to dismiss, which is contingent simply on the complaint. Also in the Doe v. Trustees, there was a defined one-year suspension. There were the facts entirely inconsistent with the case that we have here at hand. There was a commingled dishonesty issue with respect to the litigant. The John Doe was a, I believe the court characterized him as being a medical student well into his adult years. Here John Doe, the appellant, was barely an adult, if at all an adult, as he was going into his, he was in the first semester of his senior year. Also, John Doe and the Trustees of the University, Trustees of Indiana University did not raise the issue of physical harm. Counsel, I want to get back to the evidentiary hearing issue. You suggested in response to one of Judge Brennan's questions that you think an evidentiary hearing is needed to assess any potential harm against John Doe. Was that specific request made below? It was. And where was that? That would be in the joint status report where we're asking for the evidentiary hearing. And we believe the court, even without the request, but it is in the status report where we ask for the evidentiary hearing, and it's raised also. Beyond the issue of identifying Jane Roe with respect to harm to your client? There's a distinction here, right? Understood, understood. So, there may not have been an opportunity to raise the request for the evidentiary hearing subsequent to the briefing, but we did want an evidentiary hearing. That notwithstanding, we believe that the standard as provided by the court in the not just the Doe v. Trustees of University of Indiana case is that an evidentiary hearing is required. What the seventh circuit has said is there must be a careful and demanding balancing of interest. And considering that there is no objective standard or that the seventh circuit has not defined the standard for evaluating these types of cases, it would, I think it would have been, well, we certainly believe that it would have been more diligent and due process would have been appropriate if there wasn't an evidentiary hearing. So, we believe the district court was compelled for us to have an evidentiary hearing. We would like to reserve what time we have left. Very good. That will be reserved for rebuttal. Thank you, Mr. Brown. We're going to continue now with argument from the applee. Mr. Land. Good morning, your honors. May it please the court. Peter Land on behalf of the defendant appellees. This is an appeal about a decision that was left to the district court's discretion and the real question is just whether there was an abuse of discretion and there was not in deciding the pseudonym issue. Our briefs address a variety of issues. I might just focus my remarks on some of what was just occurring in the argument with Mr. Brown. Before you get there, Mr. Land, please, how should your initial consent to proceeding under a pseudonym impact our decision today? So there wasn't any consent or agreement on the pseudonym issue initially. No objection. There was just no objection and I don't think that should affect this decision at all. I think the standard. Why isn't that sufficient for waiver? I think the standards change dramatically with respect to pseudonym considerations based on this court's decisions in the Loyola and University of Indiana cases. I might note, particularly in the Loyola matter, this court raised the pseudonym issue on its own during oral argument after summary judgment had been granted. The pseudonym issue had been decided years prior in that case, again, in the same way without objection from the defendant, University, and then the parties were directed to address whether that should remain the case and the court decided that it shouldn't. We, on behalf of the university, took that issue to the district court after those decisions were issued to indicate that in light of those standards, that the institution was asking the court to reconsider the pseudonym issue. So I don't think it's waiver. I think the law had been adjusted or clarified by this court. What's the downside of having a hearing? What's the downside of having an evidentiary hearing? Having a hearing such as Mr. Brown is requesting. I don't know that there's a downside of having an evidentiary hearing. This particular district court judge took this issue very seriously. We filed briefs. We appeared for a status hearing where there was argument and discussion about whether to have an evidentiary hearing or not. That was preceded by a decision or an order from the court indicating that it needed more information to determine if there was going to be an evidentiary hearing. So we appeared to talk about that. Then we were given three weeks at the plaintiff's request to prepare a joint status report and collect any additional information that might bear on whether an evidentiary hearing would be needed. And there wasn't any information in the joint status report that you were asking about that indicated anything other than referencing what Jane Roe thought and the fact that what Jane Roe thought, which was presented in an email exchange between her and me, that she didn't have any concern that her name would indirectly be disclosed if the plaintiff's name were disclosed in litigation. So I don't think that it's a question whether there was a downside of having an evidentiary hearing. There was no need for one. There wasn't any indication presented to the district court judge about why you would need one, when the only issue that was discussed was the effect on Jane Roe, and Jane Roe had cleared that up herself. How do you respond to Mr. Brown's argument that that representation alone is not sufficient as to Jane Roe? I would start by noting that the district court has discretion to decide what is needed in order to assess that question. The Seventh Circuit's decisions, your decisions, particularly the Loyola matter that addresses the evidentiary hearing concept, does not require an evidentiary hearing. It doesn't explain what an evidentiary hearing might involve. It raises the question of factual development might be needed on that question of what Jane Roe's risk is at the district court. And I think that the Jane Roes of the world are grown women who get to decide and explain whether they think they have a risk or not. I don't think that you need evidence from the John Does or other witnesses that contradict a particular person's position on whether their privacy will be limited or violated by disclosure of someone else's name. So I don't think that's necessary to go beyond if a Jane Roe indicates that she doesn't have any concern. And I would say this, there was no contrary evidence at all presented to the district court judge about what Jane Roe thought. There were three weeks of time between the initial status hearing and the joint status report being submitted where additional information could have been obtained from her. Although in fairness, my guess is Jane Roe probably would not want to talk to John Does lawyer. Honestly, I've been involved in other matters where that's not the case. So I don't know that that would be the case here. I don't believe there's any indication there was any effort to contact her other than our effort and the clarity that she provided. And again, it's the district court's discretion to decide whether to proceed with a pseudonym or not based on the, or whether to engage in an evidentiary hearing or not, or whether one's needed. And there wasn't anything in the joint status report or any information presented to the by either side about any issue other than what Jane Roe thought. You know, I just commented on a couple of different issues. The concept of due process having been violated by the district court here and how the judge assessed the pseudonym issue, I think misses the mark. Again, the sequence of communications and opportunities that the judge afforded both parties was substantial on this issue. We filed briefs. We appeared after the judge had issued a decision indicating what the approach would be and the need for consideration of potentially having an evidentiary hearing. There was then discussion. There were then three weeks to submit information relevant to that question, and then a decision after that. I think that's honestly probably more due process than was necessary in terms of notice and opportunity to be heard about an issue. So I don't think that that carries any water. I think in total, you know, this court did set or clarify new standards for pseudonym usage by the John Does of the world who bring these Title IX cases, and the district court followed that case law, carefully reviewed the facts, and exercised discretion to make this decision. So I don't think there's any abuse. Thank you, Mr. Land. Thank you. Mr. Brown, we'll give you two minutes for rebuttal. Thank you, Your Honor. May I please call? Yes. Thank you. Your Honor, we would rebut just with a few point of factors, one being that the court set new standards. The Doe v. Trustees of the University of Indiana and the Doe v. Loyola case did not set any new standards. It was merely a reminder. I believe even the appellee cite cases from as far back as 2011, but even going back before that, going back to as far back as 1993, and also 1996. So to suggest that these are new standards, they are not new standards. I believe Judge Easterbrook was merely reminding the litigants based on, and even Doe v. City of Chicago from 2004, these were not new standards. I think it's important that I continue to point out that the cases that were before the court in 2024 and 2023 are distinguishable from this case, meaning that the underlying facts were further along and the court had much more information and data to work with. Being the limited scope of the case on this case, meaning that we were only, we were on the eve of discovery, I believe that an evidentiary hearing certainly would have been appropriate. But also the district court used terms such as it acknowledged the request for an evidentiary hearing, calling it a waste of resources. We believe that that in and of itself, considering the Seventh Circuit standards, that it must be a careful and demanding balancing of interests. We don't believe that the court's description calling it a waste of resources. We think that goes to the abuse of discretion. Thank you. Thank you, Mr. Brown. Thank you, Mr. Land. The case will be taken under advisement. Thank you. Thank you.